236

*In re* ESTATE OF IRWIN TATELMAN, Deceased.—(GERTRUDE TATELMAN, Petitioner-Appellant, *v.* BRENDA WESTCOT, Adm'r, Respondent-Appellee. )

First District (2nd Division) No. 63234

Opinion filed July 19, 1977.

Harry P. Friedlander, of Chicago, for appellant.

Sheldon A. Harris, of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Petitioner, Gertrude Tatelman, appeals from a judgment of the circuit court of Cook County dismissing her petition to remove Brenda Tatelman Westcot, respondent, as administrator of the estate of Irwin Tatelman (hereinafter deceased). Petitioner contends the evidence established a basis for the removal, and the trial court erred in prohibiting evidence of a property settlement agreement entered in contemplation of the divorce between deceased and respondent prior to the former's death.

Petitioner is the mother of deceased who died intestate on April 6, 1973. Respondent is the administrator of his estate and was deceased's estranged wife, who was living apart from him at the time of his death. There were no children born of this marriage. And, while the record suggests that they were in the divorce process, a divorce was never obtained. Thus, the entire estate would devolve upon the respondent as deceased's sole heir. Ill. Rev. Stat. 1973, ch. 3, par. 11(3).

Although not directly established by the record, it would appear that

petitioner objected to the issuance of letters of administration to respondent. (See Ill. Rev. Stat. 1973, ch. 3, par. 96(1).) On March 7, 1975, petitioner sought to remove the respondent as administrator. Her verified petition listed numerous purported creditors of deceased, although petitioner was not listed among them. It further alleged that respondent had failed to list many items of personal property in the estate inventory. A subsequent pleading alleged that respondent had taken many items of deceased's personal property for her own use.

Petitioner claimed that she visited the deceased's apartment shortly after his death and saw many items of his personal property. Petitioner denied any of the property belonged to her.

Evidence was presented that prior to his death deceased maintained checking and savings accounts with minimal balances at a local bank. Respondent explained the balance in the checking account was exhausted by bank service charges. She also said that, when she went to the bank to make inquiry about the savings balance in deceased's account, a bank officer gave her a check for $5.35 in order to close out the account.

A representative of a brokerage firm testified that 100 shares of stock currently valued at 70 cents per share were transferred from an account held solely by deceased to respondent pursuant to the latter's affidavit. A friend of respondent related she purchased a sofa for $100 from respondent which had been removed from deceased's apartment. A friend of the deceased testified that respondent authorized him to remove from deceased's apartment certain items including photographic equipment which he and deceased jointly owned. He also kept a light meter valued at $60 which he previously borrowed from deceased.

Evidence was also introduced that deceased owned stamp and coin collections. After his death, the stamp collection was sold by respondent to an appraiser for $45. Respondent retained the coin collection; and the testimony from a coin collector showed he was not interested in buying any coins except for one coin set for which he offered $11.

Respondent testified that she sold deceased's couch for $100 and had the shares of stock, previously mentioned, transferred to her name. She also removed various items of deceased's furniture, kitchen appliances and tools. She currently had possession and was using many of them. She gave a musical instrument and most of deceased's clothing to charity. It was further revealed that respondent was in possession of a washing machine and typewriter purchased by deceased from Sears. Deceased had not completed payments for these items, and Sears had filed a claim against deceased's estate which had not yet been paid.

Petitioner sought to introduce the property settlement agreement entered into between respondent and deceased in contemplation of their divorce. The trial court sustained objections in this regard, and a

subsequent offer of proof fails to precisely delineate the terms of the agreement.

Section 276 of the Probate Act (Ill. Rev. Stat. 1973, ch. 3, par. 276 (now par. 23—2)) provides:

> "On the verified petition of any interested person, or upon the court's own motion, the court may remove an * * * administrator * * * for any of the following causes:
>
>   (a) When the * * * administrator * * *
>
>       (4) wastes or mismanages the estate; or
>
>       (9) becomes incapable of or unsuitable for the discharge of his duties; or
>
>       (10) there is other good cause."

Petitioner contends that the evidence shows respondent, as administrator, has violated these statutory provisions thereby requiring her removal.

Respondent argues that petitioner is not an interested party and may not therefore seek respondent's removal as administrator. The record does now show that respondent expressly presented this issue to the trial court. However, as appellee, she may now do so if the requisite factual basis is contained in the record. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417.

■■ The record establishes that petitioner in this case is not a creditor nor an heir of deceased's estate. She further made no claim to any property taken by the administrator from deceased's apartment. There is no basis to conclude that petitioner was an interested party within the purview of section 276 of the Probate Act, or that she was aggrieved by the estate administration. *Wilkinson v. Nowers* (1920), 217 Ill. App. 314, 318; see also *In re Estate of Trost* (1937), 292 Ill. App. 60, 10 N.E.2d 857; 33 C.J.S. *Executors and Administrators* §91, at 1039 (1942); James, Illinois Probate Law and Practice §276.5, at 223 (1951).

■■ Our interpretation is further supported by the supreme court's decision in *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298. There the court discussed who is entitled to seek declaratory relief. (Ill. Rev. Stat. 1975, ch. 110, par. 57.1(1).) The court noted that one of the prerequisites for maintaining an action for a declaratory judgment necessitated that the party be "anyone interested in the controversy." The court remarked "The word, 'interested' does not mean merely having a curiosity about or a concern for the outcome of the controversy. Rather, the party seeking relief must possess a personal claim, status, or right which is capable of being affected." 66 Ill. 2d 371, 376.

Examination of the record in this case specifically negates any factual basis to conclude that petitioner is affected by respondent's conduct as

administrator. Petitioner is not an "interested" person capable of requesting the removal of respondent as administrator.

For this reason, we believe the trial court properly dismissed the removal petition. Since resolution of this appeal may be made on petitioner's inability to seek removal of the administrator, we need not consider the propriety of the trial court's refusal to permit introduction of the property settlement between respondent and deceased in their contemplated divorce proceeding.

Moreover, even should the administrator's removal have been considered by the trial court on its own motion, we do not believe the court's refusal to remove respondent can be said to be against the manifest weight of the evidence. Compare *In re Estate of Abbott* (1976), 38 Ill. App. 3d 141, 347 N.E.2d 215.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DOWNING, P. J., and PERLIN, J., concur.